## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON

**JOSEPH E. HOWARD,**

      **Plaintiff,**

**v.**                                **Case No. 2:13-cv-11006**

**WEST VIRGINIA DIVISION OF CORRECTIONS,**
**JIM RUBENSTEIN, Commissioner,**
**DAVID BALLARD, Warden, Mount Olive**
**Correctional Complex,**
**JAMES MCCLOUD, Captain of Security, and**
**JOHN DOE DEFENDANTS**

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

On December 12, 2013, the plaintiff, an inmate at the Mount Olive Correctional Complex ("MOCC"), filed an Amended Complaint (ECF No. 12) alleging that prison staff and others have conspired to murder him by placing foreign substances, such as urine and feces, in his food.   This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

Pending before the court is a Motion to Dismiss filed by the West Virginia Division of Corrections (hereinafter the "WVDOC"), Jim Rubenstein, David Ballard and James McCloud (ECF No. 33).   Also pending are three motions for injunctive relief filed by the plaintiff (ECF Nos. 21, 56 and 58-2).   The undersigned will address each motion in turn.

## <u>PLAINTIFF'S ALLEGATIONS</u>

The plaintiff's Amended Complaint contains the following factual allegations:

(1)     In the latter part of August 2012, exact dates unknown, while the plaintiff was housed in Pod Five, Cell 16 of the Mount Olive Correctional Complex, Quilliams Two Unit of Segregation, he became very ill for approximately ten days and while he was sick, he recalls thinking that his belches tasted exactly like FECES smells.

(2)     Soon after the plaintiff became ill as outlined in paragraph (1) above, Correctional Officer Cory DiMallo stated to the plaintiff, "Howard, they're putting shit and piss into your coffee dude."  It should be noted that Mr. DiMallo did not elaborate on who put the urine and feces into the plaintiff's coffee.

(3)     In November of 2012, the plaintiff filed a complaint with the Fayette County, West Virginia Prosecutor's Office alleging that Mount Olive Correctional Complex employees were involved in a conspiracy to murder him and, in January 2013, West Virginia State Police Officer M.A. Hames, Gauley Bridge Detachment, questioned the plaintiff in relation to same and made statements that clearly indicated that he not only verified that Mount Olive Correctional Complex staff are responsible for harmful contaminants including URINE and FECES being put into the plaintiff's food and drink, but also that clearly indicated the harmful substances were put into his food and drink on more than one occasion.   It should be noted that after the plaintiff told Police Officer M.A. Hames that urine and feces was put into his food and drink, Officer Hames stated, "But it stopped."

(4)     During the time frame mentioned in paragraphs (1) and (2) above, the Unit Manager for Quilliams Two was Captain James McCloud.

* * *

(10)    The plaintiff suspects that defendants Rubenstein, Ballard and McCloud have verified the allegations made by the plaintiff in paragraphs (1) through (9) above and may have conspired with State Police Officer M.A. Hames to cover up the atrocious and heinous acts that he was subjected to by prison employees . . . .

(ECF No. 12 at 1-3).

The plaintiff contends that, as a result of this conduct, the defendants have been deliberately indifferent to his safety and have subjected him to cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. (ECF No. 12 at 3, ¶ 8).   The plaintiff specifies that he is suing all of the defendants in their individual capacities.   (*Id.*)

The plaintiff further alleges that he was subjected to cruel and unusual punishment in violation of Article III, § 5 of the West Virginia Constitution "because defendants Rubenstein, Ballard and McCloud negligently failed to supervise and control John Doe subordinate staff members who are responsible for harmful substances including URINE and FECES being put into the plaintiff's food and drink."   (*Id.*, ¶ 9). Thus, the plaintiff contends that "the West Virginia Division of Corrections is vicariously liable for the actions of its employees" and he specifies that he is suing the WVDOC "pursuant to state law, under and up to the limits of the state's insurance coverage." (*Id.*)

The plaintiff's Amended Complaint seeks compensatory damages and any other relief that the court deems appropriate (ECF No. 12 at 3-5), and by way of his motions for injunctive relief, he seeks release from custody (ECF No. 21), an order directing the defendants to provide him with factory-sealed meals and drinks (ECF No. 56), and an order that the plaintiff be tested for the presence of illicit drugs, as a result of additional alleged incidents of foreign substances being placed in his food and drinks (ECF No. 58-2).

## ANALYSIS

### A.    The defendants' Motion to Dismiss.

The defendants' Motion to Dismiss (ECF No. 33) and Memorandum of Law in support thereof (ECF No. 34) assert that the plaintiff's Amended Complaint fails to state a claim upon which relief can be granted against any of the identified defendants.   In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true, and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."   While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."   *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a civil rights case.   The Court wrote:

> Two working principles underlie our decision in *Twombly*.   First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.   [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted).   Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.   Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.   *Id.*, at 556. * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.   While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.   When there are well-pleaded

> factual allegations, a court should assume their veracity and then
> determine whether they plausibly give rise to an entitlement to relief.

556 U.S. at 678-79.  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct."  *Id.* at 678.

The defendants' motion will be reviewed under Rule 12(b)(6) of the Federal Rules

of Civil Procedure and the *Twombly/Iqbal* standard.   Furthermore, as noted recently in

*Haley v. Virginia Dep't of Health*, 4:12-cv-0016, 2012 WL 5494306, at *2 n.2 (W.D. Va.

Nov. 13, 2012), "[t]he Fourth Circuit has not resolved whether a motion to dismiss based

on the Eleventh Amendment is properly considered pursuant to Rule 12(b)(1) or Rule

12(b)(6) . . . The recent trend, however, appears to treat Eleventh Amendment immunity

motions under Rule 12(b)(1) [which provides for the dismissal of claims over which the

court lacks subject matter jurisdiction]."

## *Eleventh Amendment Immunity*

To the extent that the plaintiff has asserted claims against the defendants under

the Eighth Amendment, such claims are brought in federal court by way of 42 U.S.C. §

1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any rights,
> privileges or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.   It is well-settled that state agencies, such as the WVDOC and its

officials are not "persons" within the meaning of section 1983.  In *Will v. Michigan

Dept. of State Police*, the Supreme Court stated:

Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.   As such, it is no different from a suit against the State itself.   We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.

We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.  The judgment of the Michigan Supreme Court is affirmed.   [Citations omitted].

491 U.S. 58, 71 (1989),

Furthermore, the State of West Virginia has sovereign immunity from suits in federal court pursuant to the Eleventh Amendment to the United States Constitution. The Eleventh Amendment bars lawsuits brought in federal court against a State by its own citizens or citizens of another State.  *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299 (2009); *Hans v. Louisiana*, 134 U.S. 1, 9 (1980).   This protection applies not only to the State, but also to its agencies, departments, officials and other "arms of the State."  *Will,* 491 U.S. at 71; *see also*, *Roach v. Burch*, 825 F. Supp. 116, 118 (N.D. W. Va. 1993).   Thus, the defendants' Motion to Dismiss (ECF No. 33) and Memorandum of Law (ECF No. 34) assert that, to the extent that the plaintiff has brought claims in this federal court against the WVDOC and its employees in their official capacities, those claims are barred by the Eleventh Amendment.

There are three exceptions to Eleventh Amendment immunity:   (1) a state may unequivocally announce its intention to subject itself to suit in federal court; (2) Congress may abrogate the State's immunity by statute; and (3) suits for prospective injunctive relief against state officials acting in violation of federal law avoid dismissal. *See Lapides v. Bd. of Regents Univ. Sys.*, 535 U.S. 613, 616 (2002); *see also Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000); *see also Frew ex rel. Frew v. Hawkins,*

540 U.S. 431, 437 (2004).   The State of West Virginia has not consented to suit in federal court under section 1983.   Furthermore, as noted in *Quern v. Jordan*, 440 U.S. 332, 337 (1979), when Congress enacted section 1983, it did not abrogate the states' sovereign immunity thereunder.   Therefore, the first two exceptions above are inapplicable in the instant case.

As further noted in exception three above, however, the Eleventh Amendment does permit a federal court to enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds.   *Quern*, 440 U.S. at 337.   However, this exception is not applicable to the WVDOC itself, and the plaintiff has specifically stated that the defendants, other than the WVDOC, are being sued in their individual, not their official, capacities, and the plaintiff's claims for monetary damages and the nature of the allegations made against the individual defendants support such a finding.   *See Biggs v. Meadows*, 66 F.3d 56 (4th Cir. 1995) (the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity).   Thus, the plaintiff's Amended Complaint does not properly state a claim for prospective injunctive relief either.

The plaintiff's Amended Complaint also attempts to hold the WVDOC vicariously liable for any violation of the plaintiff's rights under Article III, § 5 of the West Virginia Constitution on the basis that defendants Rubenstein, Ballard and McCloud are alleged to have negligently failed to supervise and control the John Doe subordinate officers or employees who allegedly placed foreign substances in his food and drinks.   (ECF No. 12 at 3, ¶ 9).   In an attempt to avoid the WVDOC's sovereign immunity, the plaintiff's

Amended Complaint asserts that the plaintiff is suing the WVDOC, pursuant to West Virginia law, "for under and up to the limits of the State's insurance policy."   (*Id.*)

In essence, the plaintiff contends that he is permitted to sue the State's agency up to the amount of its insurance policy limits, because such an award would not actually implicate the State's treasury.  *See Pittsburgh Elevator Co. v. W. Va. Bd. of Regents*, 310 S.E.2d 675 (W. Va. 1983) (suits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the state's liability insurance coverage, fall outside the traditional constitutional bar to suits against the state).[1]

However, as addressed in *Hampton by Bowling v. Tinder*, 732 F. Supp. 43 (S.D. W. Va. Apr. 6, 1989) (*rev'd on other grounds, Hampton v. Motley*, 911 F.2d 722 (4th Cir. 1990)), the Supreme Court of Appeals of West Virginia's (hereinafter "SCAWV") decision in *Pittsburgh Elevator* waives the State's sovereign immunity "<u>only to suits in state court, not federal court</u>." (Emphasis added).  *See also, Downey v. S. Cent. Reg'l Jail Auth.*, 2014 WL 4852014 at 6-7 (S.D. W. Va. July 30, 2014); *Vaughan v. Sheely*, 2013 WL 8182783 (N.D. W. Va., Aug. 12, 2013).   Thus, despite the fact that the plaintiff has attempted to vitiate the State's sovereign immunity by citing the language of *Pittsburgh Elevator* and bring a claim against the WVDOC under the West Virginia Constitution or other state law, he cannot pursue such a claim in this federal court.[2]

For all of these reasons, the undersigned proposes that the presiding District Judge **FIND** that the WVDOC is immune from liability on all of the plaintiff's claims for relief, and must be dismissed as a defendant in this lawsuit.   Although the parties' briefs

---

[1]   The plaintiff's Response to the defendants' Motion to Dismiss repeats his contention that he "is suing the WVDOC under and up to the limits of the State's insurance coverage pursuant to WV state common law [a tort action] and WV Code § 29-12-5."   (ECF No. 42 at 12).

[2]   The plaintiff might not be prohibited from advancing such an argument in a state court.

extensively addressed the merits of the plaintiff's vicarious liability claim against the WVDOC, the undersigned believes that no further analysis of that claim is necessary in light of this proposed ruling.

### *Individual capacity claims against Rubenstein, Ballard and McCloud*

The defendants' Memorandum of Law in support of their Motion to Dismiss asserts that the plaintiff has not alleged any personal involvement by Rubenstein, Ballard and McCloud in the alleged contamination of his food and drink with urine and feces.   Thus, the defendants assert that, essentially, the plaintiff is attempting to hold them liable under a theory of supervisory liability.

The seminal issue in this case is whether the defendants' conduct violated the plaintiff's right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment of the United States Constitution.   In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"   This is a low standard.   The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'"   *Id.* at 833.

In *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), the Court held that supervisors may be liable for the actions of their subordinates where the supervisor, by his own conduct, was deliberately indifferent to, or tacitly authorized or approved, prior constitutional violations.   Such liability is not based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates'

misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." 13 F.3d at 798 (*quoting Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)). In *Shaw*, the Fourth Circuit discussed the following elements necessary to establish a supervisor's liability under 42 U.S.C. § 1983:

> 1)   The supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> 2)   The supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and
>
> 3)   There was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injuries suffered by the plaintiff.

13 F.3d at 799. However, in *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court clarified that a prison official's "actual subjective awareness" of an excessive risk of harm or safety was required to hold the official liable under the Eighth Amendment. Thus, a prison official cannot be held liable for the failure to alleviate a risk that he should have perceived, but did not in fact perceive. *Id.* at 838.

Using the *Shaw* factors, the defendants' Memorandum of Law in support of their Motion to Dismiss asserts that the plaintiff's Amended Complaint fails to state proper supervisory liability claims against defendants Rubenstein, Ballard and McCloud. These defendants also assert that the plaintiff's Amended Complaint fails to show that any of the John Doe defendants were acting pursuant to an official policy or custom for which these defendants were responsible. *See Fisher v. Wash. Metro. Area Transit Auth.*, 690 F.2d 1133 (4th Cir. 1982). Their Memorandum of Law states:

In the case at bar, Plaintiff has not identified an official policy or custom that the John Doe Defendants acted pursuant to when allegedly contaminating his food and drink.   Moreover, the Amended Complaint does [not] contain the required elements for § 1983 supervisory liability against Rubenstein, Ballard, and McCloud.   Indeed, there is no allegation they had knowledge that John Doe Defendants allegedly engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to citizens like the Plaintiff.   For example, there is no allegation that the alleged misconduct of John Doe Defendants was documented and widespread at Mount Olive.   Thus, because Plaintiff cannot demonstrate any knowledge to meet the first requirement of the *Shaw* test, any § 1983 supervisory liability claims must be dismissed.

Moreover, there is no allegation that a response to any such knowledge was so inadequate as to show "deliberate" indifference or tacit authorization of the alleged offense or practices."   In fact, Plaintiff acknowledges that the alleged misconduct was investigated by the West Virginia State Police when he was personally interviewed.   Finally, there is no allegation of an affirmative causal link between purported inaction and the particular constitutional injuries suffered by the Plaintiff.   Again, Plaintiff has failed to allege that Rubenstein, Ballard and McCloud had knowledge of any documented and widespread misconduct of the John Doe Defendants that would demonstrate an affirmative causal link. Consequently, Plaintiff fails to state § 1983 claims against Rubenstein, Ballard and McCloud that survive dismissal.

(ECF No. 34 at 7-8).

The defendants further assert that, to the extent the plaintiff has attempted to allege a claim against these three defendants under Article III, § 5 of the West Virginia Constitution (the only state authority identified in the Amended Complaint), for failure to supervise and control the John Doe defendants, such a claim also fails as a matter of law because Article III of the West Virginia Constitution does not give rise to claims for monetary damages.   *See Smoot v. Green*, 2013 WL 5918753 at *4 (S.D. W. Va., Nov. 1, 2013)[3] (Copenhaver, J.) and *McMillion-Tolliver v. C.O. Kowalski*, 2014 WL 1329790 at

---

3   In a Sur-Reply which he was granted leave to file, the plaintiff attempts to limit the holding in *Smoot* to the facts of that case, and claims that it is not a *per se* bar to damage awards under Article III of the West Virginia Constitution.   (ECF No. 47 at 5).   However, the undersigned has cited other authority in which a similar conclusion was reached.

*2 (S.D. W. Va., Apr. 1, 2014) (Goodwin, J.) (both citing *Harrah v. Leverette*, 271 S.E.2d 322, 324 (W. Va. 1980). (ECF No. 34 at 8-9). Thus, as asserted by the defendants, the undersigned proposes that the presiding District Judge **FIND** that, without an independent statute authorizing money damages for violations of the West Virginia Constitution, the plaintiff's Amended Complaint fails to state a claim upon which relief can be granted on that basis.

On May 14, 2014, the plaintiff filed a Response to the defendants' Motion to Dismiss (ECF No. 42). The undersigned first notes that the plaintiff's Response contains a number of new factual allegations asserting that, in 2008 and 2009, he and a Dr. Thaine E. Billingsley both made defendant Rubenstein, and MOCC administrative personnel aware of the fact that he was being labeled a snitch and a child molester, and that he was being threatened by MOCC employees. (*Id.* at 2-4, ¶¶ 7-16).[4] The plaintiff's Response further contends that, in February and April of 2012, he exhausted grievances about being labeled a snitch and child molester and again alleged that threats were being made against him by MOCC staff, including defendant McCloud. (*Id.* at 2, ¶ 6).

The plaintiff further contends that West Virginia State Police Officer M.A. Hames knows the identities of the persons responsible for the contaminants being put in his food and drink. (*Id.* at 4, ¶ 18). He further contends that he can positively state that he ingested feces at least one time, urine at least 10 times and toilet bowl cleaner at least two times. (*Id.*, ¶ 19). The plaintiff further contends that he overheard other inmates make

---

4  The undersigned notes these new allegations fall outside the two-year statute of limitations applicable to section 1983 claims in West Virginia. *See Blanck v. McKeen*, 707 F.2d 817 (4th Cir. 1983); W. Va. Code § 55-2-12(b) (1981); *see also McCausland v. Mason County Bd. of Educ.*, 649 F.2d 278 (4th Cir. 1981); *Rodgers v. Corporation of Harpers Ferry*, 371 S.E.2d 358 (W. Va. 1988).

statements that MOCC security personnel allowed other inmates to put these items in the plaintiff's food and drink. (*Id.*, ¶ 20). The plaintiff contends that all of these facts demonstrate that he is in danger due to the actions of MOCC employees. (*Id.*, ¶ 23).

> The plaintiff's Response further asserts:
>
> Due to defendants Rubenstein and Ballard failing to adequately investigate the plaintiff's allegations that WVDOC employees threatened him and labeled him as being a snitch and a child molester; due to their failing to take adequate steps to ensure that the plaintiff was safe; due to their failing to control and supervise subordinate employees, including defendant Rubenstein failing to control and supervise defendant Ballard and defendant Ballard failing to supervise and control defendant McCloud, and defendant McCloud failing to supervise and control subordinate staff, the plaintiff was subjected to cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution by the John Doe defendants who are responsible for the contaminants being put into his food and drink for which defendants are liable for [sic].

(*Id.* at 9).

The plaintiff contends that defendants Rubenstein and Ballard were made aware of the fact that he was being threatened through his grievances and the letters written by Dr. Billingsley to Rubenstein in 2008 and 2009. (*Id.* at 10). The plaintiff further contends that defendant McCloud, whom the plaintiff claims personally called the plaintiff a snitch and a child molester, denied the allegations in responding to the plaintiff's grievances, which were affirmed by Ballard and Rubenstein. (*Id.*) The plaintiff's Response further states:

> Defendant McCloud's actions, as they relate to his threatening the plaintiff and labeling him as being a snitch and a child molester, could be construed as direct participation in what happened to the plaintiff, or at least as tacit authorization to his subordinates to do what they did to the plaintiff.
>
> Defendants Rubenstein and Ballard's inaction, as it related to affirming the decision by defendant McCloud regarding the grievances that the plaintiff filed about being threatened and labeled as being a snitch and child molester by MOCC staff, also operated as tacit authorization to defendant

McCloud and the subordinate John Doe defendant staff members to do what they did to the plaintiff.

Due to the actions and inactions of defendants Rubenstein, Ballard and McCloud, the John Doe defendants were deliberately indifferent to the plaintiff's safety.

(*Id.* at 10-11).

The plaintiff also makes a general assertion that "staff on inmate abuse is widespread within the WV prison system and well-documented." (*Id.* at 11). He lists several other cases that are or were pending in this federal court in which these defendants and other MOCC officials were alleged to have been deliberately indifferent to inmate safety. However, those cases are factually distinguishable from the plaintiff's case.

The defendants' Reply reiterates their position that the plaintiff has failed to state sufficient facts to establish claims of supervisory liability against defendants Rubenstein, Ballard or McCloud. The Reply further states:

Indeed, even though Plaintiff alleges that he put Rubenstein and Ballard on notice that he had been threatened by [MOCC] employees for being a snitch and a child molester, Plaintiff has failed to establish that they had actual or constructive knowledge of the risk of constitutional injury from urine and feces being placed in his food and drink. Similarly, Plaintiff has failed to show any actual or constructive knowledge on the part of McCloud. Quite frankly, Plaintiff cannot make such a showing because he admittedly does not know the identity of the John Doe Defendants who purportedly contaminated his food and drink. Indeed, given that Plaintiff does not know the identity of the John Doe Defendants, he could not have put Rubenstein, Ballard and McCloud on prior notice that he was at risk of his food and drink being contaminated with urine and feces. Accordingly, because Plaintiff cannot demonstrate any actual or constructive knowledge by Rubenstein, Ballard and McCloud to meet the first requirement of the *Shaw* test, and § 1983 supervisory liability claims must be dismissed.

(ECF No. 43 at 3-4). The defendants' Reply also reiterates that, under the applicable

14

pleading standard established in *Twombly* and *Iqbal, supra*, the plaintiff's Amended Complaint fails to establish any plausible claim against these three defendants.   (*Id.* at 4-5).[5]

To the extent that the plaintiff has attempted to allege claims against defendants Rubenstein, Ballard and McCloud concerning deliberate indifference to the plaintiff's safety, the undersigned proposes that the presiding District Judge **FIND** that, even viewing the plaintiff's allegations as true, and in the light most favorable to the plaintiff, the Amended Complaint does not contain "enough facts to state a claim to relief that is plausible on its face."   The factual allegations concerning the conduct of these defendants are threadbare, conclusory and largely appear to be extrapolated from the allegations against the John Doe defendants who are alleged to have placed the foreign substances in the plaintiff's food and drink.   Such allegations against defendants Rubenstein, Ballard and McCloud do not satisfy the elements of *Shaw* in order to sufficiently state claims of supervisory liability, nor do they meet the standards set forth in *Twombly* and *Iqbal*.   Therefore, the undersigned proposes that that the presiding District Judge **FIND** that the plaintiff's Amended Complaint fails to state any plausible claims against defendants Rubenstein, Ballard and McCloud.

For all of the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Motion to Dismiss (ECF No. 33) and

---

5  The plaintiff's Sur-Reply largely addresses the immunity issues and the vicarious liability claim against the WVDOC which have already been addressed above.   Concerning the supervisory liability claims against defendants Rubenstein, Ballard and McCloud, however, the plaintiff reiterates his position that these defendants were on notice of the threats to his safety no later than a grievance filed on April 23, 2012, and that the response of these defendants to that grievance was so inadequate as to be construed by the John Doe Defendants as tacit authorization of their conduct.   (ECF No. 47 at 3-4).   Thus, the plaintiff asserts that he has sufficiently established the *Shaw* elements with respect to pleading supervisory liability claims against defendants Rubenstein, Ballard and McCloud, and that he has clearly identified each defendant's acts that violated his rights in order to state plausible claims against these defendants.   (*Id.* at 4, 6).

dismiss all of the claims against the WVDOC, Jim Rubenstein, David Ballard and James McCloud.[6]

### B.      The plaintiff's Motions for Extraordinary Injunctive Relief.

The plaintiff has filed three motions seeking various forms of extraordinary injunctive relief.   The first motion, entitled Motion for Release Order (ECF No. 21), which is accompanied by a Memorandum in Support (ECF No. 22), asserts that the plaintiff should be released from incarceration because of the alleged conduct of staff at MOCC placing foreign and harmful substances in his food and drinks, and because staff have informed other prisoners that the plaintiff is a "rat" or a "snitch," which, the plaintiff contends, has placed his life in danger.   (ECF No. 22 at 6-12).

The plaintiff's Memorandum in Support of his Motion for Release Order states in pertinent part:

> [T]he very fact that prison officials labeled the plaintiff as being a snitch and a child molester in the first place and the very fact that both MOCC staff and inmates have already attempted to murder him by contaminating his food and drink are circumstances not only clearly showing that the plaintiff is confined under conditions of imprisonment that poses a substantial risk of serious harm to him personally, it also shows that MOCC employees cannot be trusted to provide the plaintiff with the protection he is entitled to as outlined in *Farmer v. Brennan*, *supra*.

(ECF No. 22 at 8-9).

Both in his Memorandum in Support of his Motion for Release Order, and in a separate document entitled "Notice of Constitutional Question (ECF No. 23), the plaintiff challenges the constitutionality of 18 U.S.C. §§ 3626(a)(3)(A)(i) and (ii) and also

---

6 The plaintiff has filed a document seeking to add new defendants, which the court will treat as a Motion to Amend Amended Complaint (ECF No. 76).   Also pending are several discovery motions and a Motion for a Video Hearing (ECF No. 58-1).   By separate Order, the undersigned will grant the Motion for Video Hearing, and will hold a status conference, with the petitioner appearing by video conference from MOCC, to address these other outstanding motions and the subsequent direction of this case.

subsections (B), (C), (D), and (E)(i) and (ii) of that statute, as it relates to the circumstances of his case.   However, the plaintiff offers no other argument or authority to support his constitutional challenge, other than to state that this statute prevents him from being awarded redress that will enable him to avoid being abused again or killed.

Section 3626 of Title 18 of the United States Code governs appropriate remedies with respect to prison conditions.   While the statute does enable a court to grant prospective relief, such relief must be narrowly tailored and involve the least restrictive means to correct the violation of a Federal right.   *See* 18 U.S.C. § 3626(a)(1).   The court must also give "substantial weight to any adverse impact on public safety or the operations of a criminal justice system caused by the relief."   *Id.*

Subsection (a)(3) of § 3626 provides that a court may not enter a prisoner release order unless (i) the court has previously entered an order for less intrusive relief that has failed to remedy the deprivation of the Federal right sought to be remedied through the prisoner release order; and (ii) the defendant has had a reasonable amount of time to comply with the previous court orders.   18 U.S.C. § 3626(a)(3)(i) and (ii). Furthermore, a prisoner release order may only be granted by a three-judge court in accordance with certain procedures.   18 U.S.C. §§ 3626(a)(3)(B), (C) and (D).   Most notably, subsection 3626(a)(3)(E) limits such relief to cases in which the three-judge court finds by clear and convincing evidence that (i) "crowding is the primary reason for the violation of a Federal right" and (ii) "no other relief will remedy the violation."   18 U.S.C. § 3626(a)(3)(E)(i) and (ii).

As will be discussed in greater detail *infra*, the plaintiff essentially seeks preliminary injunctive relief when he has not clearly demonstrated that he is likely to

succeed on the merits of his claims.  At present, the plaintiff has not sufficiently established that any of the named defendants engaged in conduct that actually violated his constitutional rights.  Thus, his request for any form of preliminary injunctive relief is premature.  Moreover, the plaintiff has not sufficiently demonstrated that 18 U.S.C. § 3626 is unconstitutional on its face or in relation to the particular circumstances of his case.  Therefore, the plaintiff's request for a prisoner release order is not warranted, and this District Court cannot grant such relief without first ordering some less intrusive form of injunctive relief and finding that the defendants have not complied with the same.

The plaintiff's second motion for injunctive relief ("Motion for Injunction") requests that the court order that the plaintiff be provided with factory-sealed food and drinks, to ensure that no one is tampering with his meals.  (ECF No. 56 at 1).  The plaintiff also filed a Memorandum of Law in Support of this motion (ECF No. 57).

The plaintiff's Memorandum of Law asserts that, on June 5, 2014, a Corporal Cavanaugh attempted to murder him "by putting a narcotic into the plaintiff's food that was supplied to him by MOCC Medical Department [personnel] RN Kelly Foster."  (*Id.* at 1-2).  The plaintiff otherwise repeats his contentions that he has been "set up by racist, white supremacist inmates and prison employees who have told others that the plaintiff is a snitch, a child molester and a nazi."  (*Id.* at 2-3).  The plaintiff also specifically asserts that these inmates have forged his signature on documents naming themselves as his sole beneficiary and planning to murder him so they can inherit any money to which the plaintiff may be entitled.  (*Id.* at 3).  Thus, the plaintiff reiterates that his life is in danger.

The plaintiff's third motion for injunctive relief ("Motion for Expedited Relief") requests that the court order that the plaintiff be tested for "illicit drugs," because he claims that unnamed persons at MOCC are now lacing his food and drink with painkillers, which he suspects to be heroin, in addition to other substances, such as cleaning chemicals.   (ECF No. 58-2).   The plaintiff's Memorandum of Law in support of this third motion alleges that, on June 19, 2014, an unnamed "racist white supremacist prison staff" attempted to murder him by putting "some type of painkiller, which he suspects was HEROIN," into his food.   (ECF No. 59 at 1).   The plaintiff requested that the court order that he be drug tested, and further states that he is "in extreme danger." (*Id.* at 6).   Thus, he again asks that the court grant all of his requested injunctive relief, including his Motion for Release Order.   (*Id.*)

On June 30, 2014, the defendants filed a Response to the plaintiff's second Motion for Injunction.   (ECF No. 61).   The Response states:

> It is well-established that inmates must be provided nutritionally adequate food, "prepared and served under conditions which do not present an immediate danger to health and well being of the inmates who consume it."   *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980), *cert. denied* 450 U.S. 1041, 68 L. Ed.2d 239, 101 S. Ct. 1759 (1981); *Bolding v. Holshouser*, 575 F.2d 461 (4th Cir. 1978), *cert. denied* 439 U.S. 837, 58 L. Ed.2d 133, 99 S. Ct. 121 (1978).   However, a federal court's power to intervene in the internal operations of state agencies is limited.   In order to receive injunctive relief, Plaintiff must show real and immediate threat of injury.   *Los Angeles v. Lyons*, 461 U.S. 95, 102-06, 103 S. Ct. 1660, 75 L. Ed.2d   675 (1983), and in prison condition cases, prospective relief may extend no further than that necessary to correct the violation of the federal right that has been infringed.   18 U.S.C. § 3626(a)(1)(A).

(ECF No. 61 at 2).   The Response then addresses the standard for granting preliminary injunctive relief.   (*Id.* at 2-3).

In 2009, the United States Court of Appeals for the Fourth Circuit revisited the applicable standard of review for preliminary injunctions in the case of *The Real Truth About Obama*, 575 F.3d 342 (4th Cir. 2009) (hereinafter "*Real Truth*")[7], in light of the Supreme Court's decision in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed.2d 249 (2008). As noted by the *Real Truth* Court:

> A preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants relief *pendente lite* of the type available after the trial. *See In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524-26 (4th Cir. 2003); *see also De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220-21, 65 S. Ct. 1130, 80 L. Ed. 1566 (1945). Because a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by "a clear showing" that, among other things, it is likely to succeed on the merits at trial. *Winter*, 129 S. Ct. at 376; *see also Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed.2d 162 (1997) (per curiam). * * *
>
> In its recent opinion in *Winter*, the Supreme Court articulated clearly what must be shown to obtain a preliminary injunction, stating that the plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 129 S. Ct. at 374. And all four requirements must be satisfied. *Id.* Indeed, the Court in *Winter* rejected a standard that allowed the plaintiff to demonstrate only a "possibility" of irreparable harm because that standard was "inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 375-76.

575 F.3d 345-46.

The *Real Truth* decision emphasizes that "the *Winter* requirement that the plaintiff clearly demonstrate that [he] will likely succeed on the merits is far stricter than the [*Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co.*, 550 F.2d 189

---

[7]    Although the original decision in *Real Truth* was vacated by the Supreme Court for further consideration in light of the decision in *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), the Fourth Circuit reissued its opinion on Parts I and II of its earlier opinion in the case. *See* 575 F.3d at 345-347.

(4th Cir. 1977)] requirement that the plaintiff demonstrate only a grave or serious *question* for litigation." *Id.* at 346-47. The *Real Truth* further distinguishes the *Winter* standard from the old *Blackwelder* standard because it no longer requires the court to balance the irreparable harm to the respective parties, but rather requires the plaintiff to make a clear showing that he is likely to be irreparably harmed, and that the court must pay particular attention to the public consequences in employing the extraordinary remedy of an injunction. The Court again emphasized that <u>all four</u> factors must be met in order to justify this extraordinary relief. *Id.* at 347. Thus, the Court stated that the standard articulated in *Winter* would henceforth govern the issuance of preliminary injunctions in the all federal courts. *Id.*

The defendants contend that the plaintiff cannot demonstrate either the first or second factor under *Winter*. Their Response states:

> In the case at bar, Plaintiff cannot demonstrate the first factor by a clear showing that he is likely to succeed on the merits that MOCC employees are trying to kill him by contaminating his meals at MOCC. Simply put, he has failed to present any credible evidence that he has sustained physical injuries related to contamination of his meals. Indeed, despite his claims of contamination, Plaintiff appeared in good physical health during the video conference on June 4, 2014 with the Court. Moreover, since he filed his Complaint and Amended Complaint, he has obviously consumed numerous meals and beverages at MOCC without any serious injuries. Likewise, Plaintiff has apparently lived under these same prison conditions since he filed the Complaint and Amended Complaint without any obvious injuries to his health. Thus, Plaintiff has failed to make a clear showing that he is likely to succeed on the merits of his claims against Defendants.

> Similarly, as to the second factor, the Plaintiff has failed to make a clear showing that he will be irreparably harmed absent preliminary relief for his request. Again, he continues to consume meals and beverages without any physical harm from any alleged contamination.

(*Id.* at 3-4).   The defendants further assert that the balance of equities tips in favor of the defendants because the plaintiff has made no clear showing that the current method of preparing and delivering meals has caused or will cause the plaintiff irreparable harm and the public interest is best served by denying the requested relief to avoid unnecessary additional costs and interference with the routine of daily meal preparation and delivery at the prison.   (*Id.* at 4).   Thus, the defendants asset that, since the plaintiff cannot meet all four *Winter* factors, his request for extraordinary relief must be denied.   (*Id.*)

The defendants also filed a separate Response to the plaintiff's third motion for injunctive relief in which he seeks drug testing.   (ECF No. 63).   Their response incorporates the arguments made in their prior response.

All of the plaintiff's requests for preliminary injunctive relief are speculative at best.   As noted by the defendants, the plaintiff's motions largely address conduct that has occurred in the past and only assert theoretical future injury.   A mere possibility of additional harm will not suffice to support the granting of a preliminary injunction. *Winter*, 555 U.S. at 21.   Moreover, as noted above, the plaintiff has not demonstrated that the relief he is seeking can be ordered by this court against the named defendants, and there remain questions as to who the proper defendants, if any, might be in this regard.

Thus, the plaintiff has not clearly shown that he is likely to succeed on the merits of his claims or that he is likely to be irreparably harmed without preliminary injunctive relief.   Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not demonstrated the need for preliminary injunctive relief under

the circumstances.   Therefore, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** the plaintiff's Motion for Release Order (ECF No. 21), the plaintiff's Motion for Injunction (ECF No. 56), and the plaintiff's Motion for Expedited Relief (ECF No. 58-2).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge.   Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.   Extension of this time period may be granted by the presiding District Judge for good cause shown.   Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.   *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).   Copies of such objections shall be provided to Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.


February 10, 2015

Dwane L. Tinsley
United States Magistrate Judge

23